**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 15, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2026AP160**

**STATE OF WISCONSIN**

Cir. Ct. No. 2024TR2856

**IN COURT OF APPEALS
DISTRICT II**

VILLAGE OF GRAFTON,

    PLAINTIFF-RESPONDENT,

 V.

BLAKE S. BARNES,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Ozaukee County: STEVEN M. CAIN, Judge. *Affirmed.*

¶1 GROGAN, J.[1] Blake S. Barnes appeals from a judgment entered after a jury found him guilty of operating a motor vehicle with a prohibited alcohol concentration. Barnes challenges only the circuit court's decisions denying his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

suppression motions. He claims the court erroneously exercised its discretion when it found the police officer had: (1) reasonable suspicion to extend the traffic stop into an OWI investigation, and (2) probable cause to arrest Barnes for OWI. This court affirms.

## I. BACKGROUND

¶2 On August 3, 2024, at 12:38 a.m., a Village of Grafton (Village) police officer was on patrol monitoring for traffic violations when he observed a vehicle approaching well above the posted speed limit. The officer obtained a radar reading of 48 miles per hour, 23 miles per hour above the posted 25-mile-per-hour speed limit, and immediately initiated a traffic stop. Upon approaching the vehicle, the officer observed four occupants inside the vehicle, including Barnes, who was the driver. The officer observed that Barnes had glassy eyes and thick/slurred speech, and he detected an odor of intoxicants emanating from inside the vehicle.

¶3 During the initial interaction, Barnes informed the officer that he and the passengers were in the area for his mother's high school reunion. When asked whether he had consumed alcohol, Barnes stated he had "nothing" but then said "two beers." After the initial interaction, the officer called for a back-up officer to do an impaired driving investigation. The officer then conducted the OWI investigation based upon the odor of intoxicants, Barnes' admission to consuming alcohol, and his glassy eyes and thick/slurred speech. The officer had nearly 20 years of experience in law enforcement and had training for OWI investigations.

¶4 Once back-up arrived, the officer asked Barnes to exit the vehicle to perform field sobriety testing (FST). He administered three tests: the horizontal

gaze nystagmus test (HGN), during which the officer observed Barnes exhibited four out of six clues indicative of alcohol concentration at or above .08 percent; the walk-and-turn test, during which the officer observed Barnes exhibited two clues; and the one-leg-stand test, during which the officer observed Barnes exhibited no clues. Finally, Barnes submitted to a preliminary breath test (PBT), which reported a blood alcohol concentration of 0.14 g/210L. After the PBT but before telling Barnes the results of the test, Barnes admitted to drinking much more than two beers—about seven or eight. The officer arrested Barnes for operating while under the influence of an intoxicant. At the police station, Barnes consented to a chemical test of his breath, which showed a blood alcohol concentration of 0.13 g/210L. Barnes received citations for operating while under the influence, prohibited alcohol concentration, and speeding and was released to a responsible party.

¶5      Subsequently, Barnes filed a timely jury demand, which transferred the matter from municipal court to circuit court. Barnes subsequently filed two motions to suppress, one alleging the officer lacked probable cause and the other asserting a Fourth Amendment violation relating to the PBT.

¶6      The circuit court held an evidentiary hearing on the motions in December 2024. Only the arresting officer testified. At the conclusion of the hearing, the court agreed with Barnes that the officer did not *request* that Barnes take the PBT test, but it rejected his claim that the officer lacked probable cause to arrest. Specifically, the court found the officer had reasonable suspicion to do the PBT test, but because he did not *request* Barnes take the PBT, it was

unconstitutionally compelled, and the court suppressed the PBT results.[2] However, even without the PBT, the court found the officer had probable cause to arrest based on the stop for speeding having occurred at 12:38 a.m., the odor coming from the vehicle, Barnes' admission that he had been drinking, and his failure of the HGN test. The court did not rely on the slurred/thick speech or the walk-and-turn FST because the court found the video of the incident did not support the officer's testimony regarding the speech or the clues exhibited on the walk-and-turn FST.

¶7 After the suppression hearing, Barnes submitted a brief arguing the officer lacked reasonable suspicion to extend the traffic stop. He thought the officer's testimony at the hearing supported this new argument as to whether the officer had reasonable suspicion to extend the scope of the initial stop for speeding into one for OWI investigation. The circuit court considered but rejected this argument.

¶8 The circuit court concluded that, despite concerns regarding portions of the officer's testimony, reasonable suspicion existed to continue the OWI investigation based upon the totality of the circumstances. Specifically, the court found the officer had reasonable suspicion to extend the traffic stop to investigate for OWI based on: (1) the officer's 20 years of experience, including OWI-specific training; (2) the time of the stop being 12:38 a.m.; (3) the speeding; (4) the odor of intoxicants coming from the vehicle; (5) glassy eyes observed by the officer; and (6) Barnes' admission to drinking before the stop was extended.

---

[2] The circuit court suppressed the results of the PBT because the officer failed to ask Barnes to submit to that test. That suppression decision was not appealed, and thus the PBT will not be considered by this court in its analysis.

¶9 After the circuit court's suppression ruling, the matter went to trial, where a jury found Barnes guilty of operating a motor vehicle with a prohibited alcohol concentration.[3] Barnes now appeals, arguing that the court erred when it denied his motions to suppress.

## II. STANDARD OF REVIEW

¶10 "[A]n order granting or denying a motion to suppress evidence" presents "a question of constitutional fact, which requires a two-step analysis" on appellate review. *State v. Asboth*, 2017 WI 76, ¶10, 376 Wis. 2d 644, 898 N.W.2d 541. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." *State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (citations omitted).

## III. DISCUSSION

¶11 A police officer may conduct a traffic stop if he has reasonable suspicion that a traffic violation has been or will be committed. *State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143. Reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, ¶21 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The reasonableness of a stop is

---

[3] The parties do not explain and the Record does not reflect how the other citations were resolved.

determined based on the totality of the facts and circumstances." ***State v. Post***, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634.

¶12 Barnes argues that the circuit court should have granted his suppression motion because he believes the officer lacked reasonable suspicion to extend the stop to conduct the FSTs. Specifically, Barnes argues that the officer did not have "sufficient … separate and distinct" grounds upon which to believe he was operating under the influence, as required by ***State v. Betow***, 226 Wis. 2d 90, 94, 593 N.W.2d 499 (Ct. App. 1999). Barnes contends that the facts here—speeding over 20 miles per hour over the limit, odor of intoxicants emanating from the vehicle, admission to consuming alcohol and glassy eyes—is not enough to create reasonable suspicion to allow the officer to extend the stop. Moreover, Barnes argues that his arrest violated the Fourth Amendment because the officer lacked probable cause to believe he had committed a crime. Barnes contends that the officer lacked specific, objective, and articulable facts that demonstrate that he had more than a mere hunch that Barnes was operating while intoxicated. *See* ***State v. Nordness***, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). In sum, Barnes argues that the totality of the circumstances merely pointed to lawful alcohol consumption, not impairment. Thus, Barnes argues, the court erred when it denied his suppression motion.

¶13 In response, the Village argues that the officer had reasonable suspicion to believe Barnes was operating under the influence based on Barnes' high speed late at night, the odor of intoxicants coming from the vehicle, the officer's observation that Barnes' eyes were glassy, and Barnes' admission of drinking. It argues these are all specific, articulable factors that provide enough information to extend the traffic stop. Further, the Village proffers that the officer correctly relied on relevant facts, like the late hour, admission of drinking, odor of

intoxicants, and four of six clues on the HGN test, which all supported probable cause to arrest. Considering the totality of the circumstances, the Village contends the officer had both reasonable suspicion to extend the stop and probable cause to arrest, and thus, it argues that the circuit court did not err in denying the suppression motion. This court agrees with the Village.

*A. The Circuit Court's Findings Were Not Clearly Erroneous.*

¶14 As previously set forth, on appeal of a circuit court's decision to grant or deny a suppression motion, this court must initially determine whether the circuit court's factual findings—as relevant here, that Barnes was speeding 23 miles per hour over the limit, the odor of intoxicants that came from the vehicle, Barnes' admission to consuming alcohol, and Barnes demonstrating four of six clues on the HGN test—were clearly erroneous.

¶15 The officer testified at the suppression hearing that he stopped Barnes because he was going 48 miles per hour in a posted 25-mile-per-hour zone. Further, the officer stated he believed the incident was going to become an impaired driving investigation due to the odor of intoxicants emanating from the vehicle, Barnes' glassy eyes, and his admission to drinking two beers. The officer conducted the FSTs in light of those facts, and he observed four of six clues on the HGN test.[4] Finally, the officer testified that he administered a PBT after Barnes said "no worries." Once the officer had all of that information, he determined that

---

[4] This court does not include the other factors—the thick speech and the clues from the walk-and-turn FST because the circuit court found those factors were not supported by the video of the incident. Thus, those two factors will not be considered in this court's analysis.

Barnes' ability to operate a motor vehicle was impaired and placed him under arrest.

¶16    While the circuit court did express some concern regarding parts of the officer's testimony, it deemed multiple facts relevant to its decision. The court found that the lateness of the stop, the extent of Barnes' speeding, the odor of intoxicants coming from the vehicle, the celebration from which the group was coming, and his admission to drinking two beers were facts significant to establishing reasonable suspicion. Further, the court said "the rest flows from there." Even excluding the PBT, probable cause existed to support an arrest for OWI based on the clues Barnes showed on the HGN test combined with the other facts. Thus, the court found enough of the officer's testimony to be credible to establish both reasonable suspicion to extend the stop and probable cause to arrest. This court defers to the circuit court's credibility findings. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979) ("the trial judge is the ultimate arbiter of the credibility of the witnesses"). Upon review of the Record, this court is satisfied the circuit court's findings are not clearly erroneous as they are supported by the evidence. *See State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748 ("A [factual] finding is clearly erroneous if 'it is against the great weight and clear preponderance of the evidence.'" (citation omitted)); *see also* WIS. STAT. § 805.17(2).

*B. The Officer Had Reasonable Suspicion to Extend the Traffic Stop.*

¶17    The circuit court determined that because of the totality of the circumstances, the officer had reasonable suspicion to extend the traffic stop. Whether reasonable suspicion exists under the relevant facts is a question of law this court reviews de novo. *State v. Powers*, 2004 WI App 143, ¶6, 275 Wis. 2d

456, 685 N.W.2d 869; ***Robinson***, 327 Wis. 2d 302, ¶22. "After a justifiable stop is made, the officer may expand the scope of the inquiry only to investigate 'additional suspicious factors [that] come to the officer's attention.'" ***State v. Hogan***, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124 (alteration in original; citation omitted). The extension of a traffic stop requires that an officer be able to point to specific, articulable facts that, when taken together with inferences from the totality of the circumstances, would lead a reasonable officer to believe that unlawful activity might be occurring. ***State v. Waldner***, 206 Wis. 2d 51, 55-56, 58, 556 N.W.2d 681 (1996). Ultimately, an officer may observe "behavior that has a possible innocent explanation, a combination of behaviors—all of which may provide the possibility of innocent explanation—can give rise to reasonable suspicion." ***Hogan***, 364 Wis. 2d 167, ¶36. Although individual facts, in isolation, may be insufficient to form reasonable suspicion, the relevant inquiry is the effect of the totality of the facts and inferences from those facts. ***Waldner***, 206 Wis. 2d at 58.

¶18 Here, the relevant facts, combined with reasonable inferences from those facts, create reasonable suspicion that justifies the officer's extension of the traffic stop. Looking to the totality of the circumstances, Barnes was driving after midnight well above the posted speed limit, odor of intoxicants emanated from the vehicle, the officer observed Barnes' glassy eyes, and Barnes admitted to consuming alcohol. Barnes argues that none of these facts individually are dispositive for establishing reasonable suspicion, relying on several decisions, including ***Post***, 301 Wis. 2d 1, ¶¶36-37, which he says held that "glassy eyes and slurred speech, without additional corroborating indicators of intoxication, are insufficient to establish reasonable suspicion for an OWI investigation." ***Post*** did not say this, let alone *hold* this. ***Id.*** In ***Post***, our supreme court addressed whether

9

weaving in a single lane constituted reasonable suspicion. *Id.* Barnes also relies on *State v. Meye*, No. 2010AP336-CR, unpublished slip op. (WI App July 14, 2010) for the proposition that the mere odor of intoxicants, without other articulable indicators of intoxication, is insufficient to provide reasonable suspicion. *Meye* is not binding on this court. And, while *Meye* does say that odor alone is insufficient, *id.*, ¶6, Barnes' case was not based on odor alone. Moreover, a court does not isolate each indicium in assessing whether an officer had reasonable suspicion, but instead looks at all of the facts, with inferences taken from those facts, to determine if an officer may extend a stop for further investigation. *See Hogan*, 364 Wis. 2d 167, ¶36; *State v. VanBeek*, 2021 WI 51, ¶52, 397 Wis. 2d 311, 960 N.W.2d 32 ("Reasonable suspicion, as with other Fourth Amendment inquiries, is an objective test that examines the totality of circumstances.").

¶19 Here, it was reasonable for an officer to extend the stop based on the excessive speed, the odor of intoxicants emanating from the vehicle, and with knowledge of the driver's own admission to drinking alcohol, as a potential OWI suspect that should be investigated further. Because the totality of the circumstances points to a reasonable suspicion that the driver was driving while under the influence, the officer had the requisite suspicion to extend the traffic stop. Thus, the circuit court's decision denying Barnes' motion to suppress on this basis was not error.

*C. The Officer Had Probable Cause to Arrest Barnes for OWI.*

¶20 The circuit court determined that the officer had probable cause to arrest Barnes because the quantum of evidence within the officer's knowledge was sufficient to support a belief that Barnes probably committed or was committing

an OWI. The test to determine whether probable cause exists is objective and requires examination of the totality of the circumstances. *State v. Weber*, 2016 WI 96, ¶20, 372 Wis. 2d 202, 887 N.W.2d 554. A court "consider[s] whether the police officer had 'facts and circumstances within his or her knowledge sufficient to warrant a reasonable person to conclude that the defendant … committed or [was] in the process of committing an offense.'" *State v. Blatterman*, 2015 WI 46, ¶35, 362 Wis. 2d 138, 864 N.W.2d 26 (omission and alteration in original; citation omitted). Further, when an "officer is confronted with two reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest." *State v. Kutz*, 2003 WI App 205, ¶12, 267 Wis. 2d 531, 671 N.W.2d 660. Probable cause is not a rigid test, but instead a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Secrist*, 224 Wis. 2d 201, 215, 589 N.W.2d 387 (1999) (citation omitted).

¶21 This court concludes that the totality of the circumstances presented here establishes the officer had probable cause to arrest for an OWI offense. Wisconsin courts recognize that the late hour is relevant in impaired driving investigations, *see Post*, 301 Wis. 2d 1, ¶36, and speeding may constitute risky driving behavior consistent with impairment, *State v. Adell*, 2021 WI App 72, ¶25, 399 Wis. 2d 399, 966 N.W.2d 115. These two factors combined with an admission to consuming alcohol prior to driving, as well as the officer observing four of six clues on the HGN test, provide sufficient factors indicating impairment. The factors together support that the officer had probable cause to arrest.

¶22 Barnes looks to propose innocent explanations for each observation: glassy eyes may occur at night, speeding alone may not establish intoxication, the others in the vehicle may have created the odor of intoxicants. But, Wisconsin

courts reject siphoning each individual fact to its own analysis. *See Waldner*, 206 Wis. 2d at 58 ("The building blocks of fact accumulate. And as they accumulate, reasonable inferences about the cumulative effect can be drawn."). Officers are not obligated to rule out innocent explanations when they observe indicia of an intoxicated driver. *See State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 ("'[I]nnocent' behavior frequently will provide the basis for a showing of probable cause." (citation omitted)). And, this court will not either.

¶23 Police officers are tasked with making "split-second" on-the-street decisions, often "in circumstances that are tense, uncertain, and rapidly evolving[.]" *State v. Smith*, 2018 WI 2, ¶32 n.18, 379 Wis. 2d 86, 905 N.W.2d 353 (citation omitted). Our supreme court has stated: "Drunk driving is indiscriminate in the personal tragedy of death, injury, and suffering it levies on its victims. It may transform an innocent user of a highway into a victim at any time—with no advance notice and no opportunity to be heard." *Nordness*, 128 Wis. 2d at 33. Moreover, drunk driving:

> is also a scourge on society: drunk driving exacts a heavy toll in terms of increased health care and insurance costs, diminished economic resources, and lost worker productivity. It is an affliction which produces no offsetting human or economic benefits; it engenders no positive human or economic incentive. It destroys and demoralizes personal lives and shocks society's conscience. It has no legitimate place in our society.

*Id.* at 33-34.

¶24 Determining whether a driver's level of intoxication is just over or just under the legal limit is one such decision officers must make in real time based on the circumstances in the moment. Here, this court cannot conclude that under all the circumstances, the officer's decision to arrest was objectively

unreasonable. Although Barnes certainly exhibited some behavior suggesting he was not driving under the influence, he also displayed multiple symptoms that could lead a reasonable police officer to conclude that he probably was driving under the influence. A violation of the law was more than a mere possibility. The circuit court did not err in denying Barnes' suppression motion on the basis of probable cause.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.